Good morning, I'm Judge Kleinfeld, Judge Wardlaw, and Judge Fletcher. My name is Stephen Yag, and I represent the plaintiffs. And I'm going to do something unusual. I'm going to reserve all my time for rebuttal because I've read the briefs, and I think they fully and adequately, along with the August 11th Rule 28J submission, adequately cover all the issues in this case. So unless anyone has any questions now, I'm just going to sit down. Give me just a moment. I want to check and see if I did. I have one question. I've been trying to find a way. I think that you are the prevailing party. I'm sorry? I think that you are the prevailing party. I agree with that analysis of the district court. And I've been trying to find a way to award you attorney's fees. It just seems to me that if the PLRA applies, then because there was no actual violation shown, that the fees are not available. So with the little time we've had, we've looked into the question of whether the PLRA actually does apply. And I'm wondering if you have any further arguments why it would not apply to this situation. Beyond what's set forth in our two briefs, we have the recent Dannenberg v. Valadez case. I believe Judge Fletcher was on that panel. There's another Fletcher in this circuit. I'm sorry. I apologize. And I think for the reasons set forth by Judge Preggerson, the younger, who was the case didn't involve prison or jail conditions at all. It involved rather, as I'm sure this Court knows, people being the fact of incarceration beyond the date on which incarceration is supposed to end. What do you do about this language in the PLRA in any action brought by a prisoner who is confined to any jail, prison or other correctional facility? My reading of that is that if it's a prisoner who's confined, it doesn't matter whether he's suing about prison conditions or something else, because they say in any action, not in actions relating to prison conditions. I respectfully disagree with that.  Show me how to read it differently. It's a different interpretation, Judge Kleinfeld. I do agree that the PLRA potentially covers anyone who at the time she or he files a lawsuit is incarcerated. But there's a second prong, and the name of the case is escaping me this moment. I think it's in 318 Fed Second. It was an amended opinion. It was written by Judge Fisher of this Court. I think it's Wyatt v. Terhune, W-Y-A-T-T v. T-E-R-H-U-N-E, in which it set forth, I think, for the first time clearly in this circuit that there were two conditions precedent to the application of the Prison Litigation Reform Act. The first is, you just stated, Judge Kleinfeld, that the person be in a condition of confinement. But the second, that it relate to a prison condition, for example, being beaten up in a jail by a guard or by another prisoner, which wasn't clear. I'll check that. I'll certainly check your citation, and if that solves the problem, it solves it. But if it doesn't, tell me how to read the language. I'm trying to figure out a way to read the words consistently with your position, and I'm having trouble. So just tell me how to do it. I can only advert to the Wyatt case and the language in there and say that the there are two conditions precedent. The language indicates that, for example, if someone were confined and they were to bring a tort action, they had been involved in an automobile accident before they went to jail, the way that you're suggesting that it might be read would mean that the condition of confinement would trump or negate the ability to bring the action simply and only by virtue of the condition of confinement. That's just not the way that act works as far as I understand it. There's got to be the second part of it. I agree that it doesn't make much sense if it were interpreted that way. What I'm looking for is a way to read the language. The language has been interpreted. When I looked at that language the first time back in 1997, I found the language very, very troublesome from the standpoint of plaintiffs who bring these cases. There's no question. And I can't stand here and say anything. I'm thinking Congress may have thought prisoners are making a big nuisance of themselves, what prisoners are with a whole lot of pro se cases and that their lawyers are even worse and we're just going to make it very difficult for them. That's what happened. There's no question about that. They were being a pain in the neck. And Congress wanted to the extent it could eliminate almost completely all litigation by either pro se prisoners or prisoners who could hook up with lawyers, they were going to do that. But, yeah, the act was as extreme and as awful as it could be for plaintiffs. The Wyatt v. Terhune citation, by the way, is on page 15 of our second brief. It's 315 Fed 3rd, 1108, and I believe that's the amended opinion. The answer to the question posed, however, is that as interpreted, the subject matter of a prisoner's lawsuit comes into play in interpreting whether or not the Prison Act actually applies, and the subject of a litigation has got to be something that has to do with prison conditions. In fact, it does not have to do with, say, a prison. Kennedy. Here's how I think I read this statute, the in any action brought by a prisoner confined, and consistently with Wyatt, and that is I would read this language, D1, to have in it an implied condition that any action with respect to something that happened in prison, that is to say not with respect to something that might have happened a year before he was incarcerated, he can bring that lawsuit, and this attorney's fees provision doesn't apply to that. I think that's a perfectly sensible reading, although I've got to do a little work to get there. But even once I've done that, I think I still have trouble getting attorney's fees in your case, because I can find it with respect to something that happened in this case, and maybe prison conditions in this case. But the problem is prison conditions is defined elsewhere in the statute as the fact that people are. Well, let me finish just a minute so you can respond, because I frankly would like some help here, because I would like there to be attorney's fees. But my problem is that I'm now at 3626. The term civil action with respect to prison conditions, which is basically as it's used in the statute, means any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of action by government officials on the lives of persons confined in prison, but doesn't include habeas. I don't believe that's right. And this is 3626. And that's the statute that Judge Craigerson relied on in his first published opinion to say the PLRA doesn't cover. But as I read this statute, it basically says to me in more words than I think are really necessary, if it's a 1983 suit with respect to what's going on in prison, it's covered. If it's a habeas, it's not. Help me out. Get me away from that if you can. I'd love to, and I'll try my best. And part of that may need to be with a Rule 28J submission, but I'll try my best right now. I think you're just reading that too broadly, and I don't know of any court that's read it that broadly, including this circuit, because this case doesn't have to do with a condition of confinement or something that happened to someone while they were in prison. It sort of does. I mean, the reason that we're all sympathetic to the claim for attorney's fees is the jail was holding everybody a day or two longer than it should have. That's a condition of confinement, namely confinement. I think it's not a condition of confinement. I think it's the fact of confinement after there's been a court order for release. And I think that if it falls or not. In your view, and I think this is Judge Craigerson's view, it's a duration of confinement, is your argument. The trouble is duration of confinement seems to be within the meaning of that statute that's coextensive with habeas. But this is obviously not a habeas. It seems like it should be. What you are challenging is the actual confinement of someone who is otherwise entitled to be released. So to me, it does seem more akin to a habeas type of action. My answer to Judge Fletcher's question was going to be before you said that, and I hope it doesn't sound like I'm stealing or cribbing your answers. It really is like habeas. It's get me out of here. And I don't like why I'm here. It's not a condition of confinement. It's get me the heck out of here. A judge ordered that we be released. And this has happened. We have scores of cases like this. In fact, the county just settled a class action suit on this for $27 million where they sent out 300,000 claim forms and got 40,000 back. This is akin to habeas. This is, if not habeas, it's in the nature of habeas. It's get me the heck out of here. Well, it isn't habeas, though. Habeas asks for a court order to free somebody. In this case, the person's already been freed, but he was held too long, and you're asking for a judgment for money to compensate. Oh, no, I'm sorry. You were asking for an injunction. It was a conjunctive relief. It didn't ask for money. Right. The new case would get us out from the bar on attorney's fees if we had been asking for money. Prior to that, I don't know if it would have been the case, and that's the Vandenberg v. Valadez case. You know, I think I misspoke. Is that the opinion written by Judge Breyer? Yes, it is, and they incorrectly list him as a circuit judge, which maybe he was. And, no, and in fact, I did see. You were correct. I was on that case. It says here, Judge W. Fletcher. No, no, it's right, and I misremembered. I didn't quite pick it up because it's not quite on point with this case, but, yes, I did sit on that case. And it was only issued on August 11th. Oh, I forget them awful fast. I thought I was the person with the worst memory in the world, and I probably still am, so I don't mean to. No, I'll run you a contest. Okay. Since I'm standing here and I've got eight minutes left and I haven't gotten to sit down, I guess I should say a few other things. I'm very concerned about the denial of the request under Rule 56F to put in more evidence, and I'm very concerned about it because it comes up in a lot of cases. The leash on discovery now, especially in Section 1983 cases in district court, is very short. It's often six months. And the discovery cycle is about 65 or 70 days. When you send out interrogatories, you get objections back. You never quite get what you want. And discovery is just an awful pain in the neck because there often isn't any cooperation. And we're forced frequently in my cases, and I do basically 99 percent of Section 1983 actions, to frequently make Rule 56F submissions because we get caught in between trying to get discovery and getting hit with a summary judgment motion. I know the Margolis case, I think it's 146. I think you made a summary judgment motion, didn't you? I did. And then the defense tried to get relief in kind of a cross motion summary judgment motion. It strikes me as problematic to start the summary judgment proceedings by making your own summary judgment motion and then say I need more time for discovery. Oh, but I had enough, I thought, to win my motion. The issue on the other one was mootness. So I didn't have enough discovery on that because that wasn't raised until there was opposition to my summary judgment motion, and there hadn't been any need for me to do unnecessary discovery on mootness because I didn't know they had complied, and I was just assuming the law had been followed. And then they came in and claimed mootness. Judge Pregerson said, no, you can't do it that way. You've got to do it on your own. And the instant I heard him say that, I immediately sent out discovery, and they stonewalled me on the discovery. I couldn't get it to address the mootness. And then summary judgment was granted to them. I think the Rule 56-F application should have been granted. That is institutionally a very important point to me, always in on this appeal, and I hope that this Court will address that and reverse the summary judgment based on the denial of the Rule 56-F application, because I was diligent in doing the pendency of the preliminary injunction, which I believe it took effect 60 days after the decision was rendered on November 8, 1998. It took place in January, and I assumed they were complying with it, and I didn't need to do any discovery on that. And then when they came in and said they were, they gave me two names of people to depose, Mr. Jackson and someone else. To depose the first one, because I decided to do one at a time, to not waste a lot of time on discovery. The first guy showed up. He said, I don't know anything about any of this. They gave you the wrong name. Then I did Mr. Jackson, and he came in and said some things that I thought were squirrelly, and I don't use that in a terrible sense of just being colloquial. And so I geared up and started doing everything. I guess I was debating whether to say this. Judge Pragerson criticized you for selective and misquotation out of that deposition with Jackson. You put in the word don't, so you corrected that in your brief to us. Of course I did. But you continue to leave out important material, and I don't appreciate it. That is to say, as I read your brief, I was, if all I did was read your brief, I was misled by what Mr. Jackson said. I'm embarrassed, and I apologize. I don't always have the time to proofread things to the extent I should. No, it was not an editing error. It was a deliberate selection of what was there. You did not misquote, but you took things out, and the taking out would have misled me if I were relying on your brief and I had not gone back and had not read Judge Pragerson's order. Then I plead guilty and I apologize. There's nothing any attorney who was confronted with something like that can say except that, and I hope it will never, and I will try to see to it that that never, ever happens again. I've never been accused of that before. You said it happened. Yes, you were by Judge Pragerson. I mean, other than in this case. Okay. I don't know what else to say. I'm guilty and I plead guilty. There's nothing more that needs to be said. Could I back up to something so I can get it out of my mind? On the PLRA issue, my understanding is that you do not present an argument for falling within one of the listed exceptions in D-1, such as D-1A or D-1B-1, D-1B-2. Your argument is that 1997E-D-1 does not apply at all. If it applies, you're not claiming an exception. You're just claiming that it doesn't apply. Unfortunately, I am, because that's the way I read it. I would like to be able to claim an exception, but I don't reasonably believe that I can do that. If this Court finds an exception, I would welcome that, but I just don't see it, and I have trouble, difficulty arguing things that I don't see, and I've watched all the other arguments here this morning, and I frankly get embarrassed when I see people arguing things that I don't think are supported. I'm just not comfortable doing that. I wish I could, but I can't. Last, the issue of mootness. I don't think anything here is moot, because it wasn't made absolutely clear under the Mesquite case from the U.S. Supreme Court that this absolutely isn't going to happen again. I can't add to the record in this case, so I won't tell this Court anything anecdotal. But I don't think the record shows that it was absolutely clear that this had been cut out and they weren't going to do it again. I've got two minutes and 18 seconds left. I'd like to reserve them, if I may, please. Thank you, counsel. Good morning, Your Honors. My name is Michael Allen from Friends Fells, Kirkland, Robertson, and Lawrence. We represent Sheriff Lee Baca, who is a defendant in this case, in his official capacity only as a result of the death of former defendant Sheriff Sherman Block. He was substituted in his official capacity by statute. As far as the plaintiff's appeal, I have nothing else to add that wasn't already addressed in the papers. So nobody wants to argue this case. Maybe we have some questions, though. If the Court has any questions on the appeal, I'm certainly pleased to address those right now. Let me start out where Mr. Yagman finished, and that is with mootness. After the district court entered the judgment holding that the case was moot, the brass decision came out. And as I read the brass decision, it allows you to do things that the injunction forbids you from doing. Do you read it the same way? Exactly. So what are you going to do? You're going to abide by the injunction? There's not an intent to go back to the old procedure. No, I asked a different question. Okay. Are you going to abide by the injunction? Well, there is no injunction right now to abide by. Are you going to abide by the injunction you said you would abide by, thereby rendering the case moot? Yes, Your Honor. Even though brass would not require you to do so? Even though brass is not required to do so. So you're undertaking here on behalf of your client in open court to maintain and continue compliance with the preliminary injunction. Even though the preliminary injunction is no longer in effect, and arguably under brass, you would be entitled to a different result. Well, perhaps I should explain myself. Because I got that right. Well, let me explain myself to you. You understand me. I understand you. What I'm saying here in open court right now is based on the current procedures at the county jail, currently inmates are not released from the jail. They're released directly from the court. That was explained in Captain Jackson's declaration. That was a change that had occurred back in 2001. So right now, under the old procedure, what would happen was inmates would be returned back to the jail. The jail would wait until the end of the day to process all the paperwork. If at that time the inmate's status was clear for release. You know, I'm having trouble following that. Judge Kleinfeld asked you a yes or no question, which followed on my question. Do you have a yes or no answer? Yes. I can say with a great degree of certainty that there is not going to be a return to the. That is not the question. Okay. The question is, there was a preliminary injunction entered against your client or in official capacity, your client. You undertook or your client undertook, and this was the basis for the mootness holding by Judge Fragerson. Correct. That the injunction was no longer necessary because all of the terms of the injunction were being complied with and would be complied with. And the question to you now is, will your client continue to abide by the terms in the preliminary injunction as it was then entered, even though it is no longer in full force and effect, but it was the premise, of course, for the mootness holding. Will your client continue to abide by the terms of that preliminary injunction, yes or no? All I can say is, as far as I know, yes. You know what, I think you're really not in a position to answer that question, are you? I have to agree with you, Judge Wardlaw. I mean, I would be making a statement on behalf of my client that I. And you really haven't discussed that with the sheriff, Baca, to see if now that brass has come down, they're going to return to that other policy. Well, the reason why I haven't discussed that, and that's why I was explaining what the current release procedures are. Well, I know you did. I just want to know, you really haven't asked. I mean, I don't know if you didn't anticipate that question here today, or you haven't really asked him about it, have you? I did not speak to my client about whether or not there was going to be an intent to return. And the reason why I didn't is because I'm familiar with the current release procedures, which under the current release procedures, inmates aren't even returned back to the jail, with a few exceptions. So because inmates are released directly from court and immediately upon the issuance of an order, there really is no, I guess, under the circumstances. You're saying they – well, let me ask you this way. I mean, I would like to be able to tell the Court, yes, I can say that. Here's the guts of why you won the case on the permanent injunction, even though you lost it on the preliminary injunction. Page 139 of the excerpts, the judge said, the defendant has submitted evidence that the Los Angeles County Sheriff's Department has permanently modified its procedures to comply with the preliminary injunction and states that it has no intention of instituting any future policy that would be prohibited by the preliminary injunction. The Court finds that there is no reasonable likelihood that the conduct enjoined by the Court in the preliminary injunction will recur. That's why I phrased my question the way that I did earlier. I recalled this language. And what it sounds to me like is you can assure us that the procedures have been changed and the old procedure will not be returned to. You really don't know whether the defendant can maintain an assurance after brass that it will continue to comply with the preliminary injunction. Well, I mean, what I can say is this, and I can say this with absolute confidence, is that let's say it went back down to the district court. The district court would obviously have jurisdiction to reconsider its preliminary injunction, obviously in light of brass. At that point, the district court may decide, even if it went back down to it, the issue of mootness wouldn't apply anymore, but in light of brass, the preliminary injunction would have no validity anymore. And so my client would be entitled to go back to the old process. But that's not, as far as I know, and I can say with a great degree of certainty that my client does not intend to go back to the old release process, because, to be honest with you, my client, I know, over the last five years or so since I've been an attorney, has made every effort to improve, increase the time, improve the time it takes to release inmates and improve the release process. To go back to the old procedure would literally require my client to then stop the direct court releases, start sending inmates back to the jails, and then wait until the end of the day to release them. That would take, that would add hours and hours and hours of time to the release process, and I don't see why my client would want to do that in light of the high amount of litigation we get in these types of cases. So I can't tell you right now, no, on behalf of my client, that that's not going to happen, but I can say right now. It would be virtually, I mean, I could say with virtual certainty that, no, that that would not happen, based on the situation that the county is in. And I can tell you I would advise my client not to return back to it. But does that mean the case is moot or not? Well, let's put it this way. Did the district court correctly rule that the case was mooted? I believe so, because at the time the district court had the facts and evidence before it, and as far as we knew at the time, although the county had valid reasons for that procedure, the county made the voluntary choice to permanently change this process. We could have taken this case on and tried to attack the preliminary injunction and argue that, no, it was not valid. It was constitutional, the procedure. But the choice was made, no, let's just change the procedure. Let's permanently change the procedure. Let's not litigate this issue. And that's what was done. Let me see if I've got this right. When Breas files a lawsuit, there's a defense and it's successful. But as far as the injunction goes, the county decides, okay, we won't take them back to the jail and hold them for up to a day and a half while we see if there are any detainers on them or anything. And as of the end of the lawsuit and also as of the present day, they just don't bring them back to the jail anymore. They let them go from the courthouse. That is the norm. There are a few exceptions which are set forth in Captain Jackson's declaration. Certain inmates who are a high risk need to go through a couple additional security checks. Inmates with, you know, if the weather outside is, you know, it's horrible and the inmate doesn't have or the detainee doesn't have a ride home, they have the option if they want to go back to the jail. If they want to go back to the jail to collect their belongings, there's a few exceptions. But other than those exceptions. Those are voluntary. That's not confiding. Yeah. I could actually, if I can, if I have a second, I can point the Court to the direct, the page in the Executive Record that specifies the exceptions. So what you're saying is it is still moot? I believe, well, I think what the situation is to speak today in light of brass. I think that mootness is not necessarily the issue today. But at the time the court, the district court had the issue before, mootness was the issue. And the evidence then and the intent then, and I can say even today, for the reasons I've told the Court, that I believe it still would be mooted today even if brass didn't exist, because I still don't see any intent to return back to it. There's no evidence before the district court. There's never been any evidence before this Court or the district court that there's been an intent to return back to the old procedure. And I don't think it's moot. So brass is an even if, is a maybe we could do it. And the answer is even if we could, there's no reason we would at this point. That's exactly, that's my point, Your Honor. Can we talk about attorney's fees? That's what I would love to talk about. Okay. Well, maybe. What's your argument as to why the Prison Litigation Reform Act, first of all, covers the issue of attorney's fees in this case? Okay. First, let's look at the Prison Litigation Reform Act. Put the Buchanan and prevailing party issue aside, and I agree with Judge Wardlove. That's a closer issue. I mean, obviously, there's a concern about that. Let's assume for the moment that this is a prevailing party under Buchanan. Okay. You may wish to argue that later, but let's assume for the present purpose that you've got a prevailing party. Let me argue to say that Plants are a prevailing party. There's an additional hurdle under the Prison Litigation Reform Act. Excuse me. There's different subdivisions under the Prison Litigation Reform Act that address different phases of litigation. Subdivision A addresses the initial initiation of a lawsuit. Oh, let me ask you. I've got a preliminary question, and that is, is this lawsuit covered under the Prison Litigation Reform Act at all? Judge Perguson found that it was not. Yes. Yes, it is, Your Honor. And it falls under it. Not every provision of the Prison Litigation Reform Act, but it falls under Subdivision D regarding the attorney's fees provision. Because? And because Subdivision D, by its express language, says, In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility in which attorney's fees are authorized under Section 1988 of this title, such fees shall not be awarded except to the extent that, and then proceeds under Sub A. Okay. Now, do you argue that that provision includes an attorney or a prisoner who is now a prisoner who's bringing a 1983 suit based on something that happened to him before he was incarcerated? Well, that's obviously a different situation that we have that's not before this Court. Well, but I'm asking you because I want to know what any means. Does it really mean any, or does it mean that there are some unstated qualifications to any? I would believe yes. I mean, obviously, it's a closer circumstance than this case. But if that were the situation, I would argue yes. And the reason why I'd argue yes is because Congress, when it enacted the Prison Litigation Reform Act, was aware that prisoners, as compared to other people in the population, have more time on their hands, there's a lot more litigation that comes out of the prisons than outside the prisons, frivolous or nonfrivolous. Well, you know, that argument depends upon the legislative history, and I'm unaware of anything in the legislative history that tells me that they were concerned about lawsuits based upon pre-incarceration events. I'm not sure I want to get into the legislative history right now, but your answer for the moment is that any means, even suits, based upon events that took place before coming to prison, based on the express language of the statute and based on the purpose of enacting the Prison Litigation Reform Act, I would say yes, unless Congress would modify it. That's a pretty extreme statute. It would appear so on its face, and I'm fortunate, fortunately, this case doesn't fall under those circumstances, because in this case, the plaintiffs were prisoners for all relevant times of the lawsuit. Let me ask you about the language in 18 U.S.C. 3626, which was the language that Judge Pregerson relied on in his first published opinion in Note 5, to hold that this action simply doesn't come within the Prison Litigation Reform Act. He says, well, listen, this is really a challenge to the fact of duration of confinement rather than truly to the conditions, which is what they're aimed at. How would you respond to Judge Pregerson's holding on that point? Your Honor, are you referring to page 101 of the excerpts of record? I want to just find the portion that you're referring to. Well, I'm referring to Judge Pregerson's opinion, which I have reprinted. I don't know where it is on the excerpts. It's footnote 5 of his first published opinion in this case, the opinion filed in 1998. I'm aware of that decision. And the section of 18 United States Code 3626a, which is currently now subsection A of 42 United States Code 1997e, the language mirrors subsection A. I would argue that that section doesn't apply under the attorney's fees provision because it's a different subsection. The section that Judge Pregerson was applying in his earlier ruling addressed whether or not plaintiffs defined as prisoners within the Act were required to exhaust administrative remedies. And that section of the Prison Litigation Reform Act is limited to cases involving prison conditions. And that's the United States Supreme Court has said where a statute has varying modifiers, some more limited, some less limited. That's evidence of the congressional intent to have one subdivision be applied. So I shouldn't look to this 1326 section, in other words, as I try and construe the language in any action. This does not have no bearing? Yes, Your Honor. So rather than reading the phrase with respect to prison conditions in subsection A to apply to the whole thing, you'd say it's more of an expressio unius est exclusio alterius, as they said it in A and they didn't say it in D. So obviously, they only mean it in A and not D. Yeah. I have two points to respond to that, Your Honor. First, United States v. Gonzalez, which is cited in our papers, the site on the case is 520 United States 1 on pages 5 and 6 of that decision. It's a 1997 Supreme Court decision, which I quote, where Congress includes particular language in one section of a statute but omits it in another section of the same act. It is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. That's my first point. My first point is that because there's different modifiers within the Prison Litigation Reform Act, the attorney's fees provision has a broader application because it says in any action, it's not limited to prison conditions. My second point, and I haven't even cited this case once in this entire argument and I really should, is the Serepon's decision, which is this Court's 2002 decision that's cited at 282, Fed Third, 755. And in that case, it was clearly by its facts, it was not what could be defined in any way as a prison condition case. It was a case in which the plaintiff was arguing that there was a due process violation in his clemency proceedings. If anything, this case is more of a prison condition case than Serepon's. And Serepon's applied the Prison Litigation Reform Act. Judging from the opinion, I've not gone back to the briefs in Serepon's, but judging from the opinion in Serepon's, it doesn't appear that there was any serious debate as to whether or not the Prison Litigation Reform Act applied. They simply applied it. Maybe they did it because an Eighth Amendment claim was raised. An Eighth Amendment claim, cruel and unusual punishment, is substantially coextensive with prison conditions claim. I don't know. But all I can tell you is that Serepon's didn't treat that as an issue they needed to analyze. They simply assumed that the PLRA applied, and then the issue that they analyzed was how did it apply. You're right, Your Honor. There wasn't any detailed analysis of that, but I think that's partially because I mean, it seems to me that the statute is very clear. I was, frankly, a bit surprised that the statute was clear. I think that is what they said. They said plain language or something like that. This is kind of a common sense question, but is someone who has been ordered  Someone who's still ordered released is still a prisoner. If someone is in court and a judge says you're free to go, the court says that. But nonetheless, the sheriff's office tracks them back to prison. Are they still a prisoner? It's a very good question, and I think that it really depends on what point in time we're talking about. Brass, for example, recognized that the county jail is entitled to not only Well, let's put it this way. The administrative processing of an inmate is not only reasonable but absolutely necessary. The county does have a certain amount of time which has been held to be, you know, reasonable as a matter of law by which it can process an inmate out. I think once you get beyond that point where it's beyond what the, you know, beyond the necessary or reasonable administrative steps, maybe at that point it's no longer fair to define that person as a prisoner. Why? Maybe he shouldn't be held as a prisoner, but he is. Well, I guess a prisoner I mean, you could say that habeas can be brought only by prisoners, except nobody who's entitled to habeas relief really is a prisoner because he shouldn't be held. Actually, let me clarify. I think prisoner, it depends on what you're defining it as. If you're defining it as the definition under the Prison Litigation Reform Act, it would seem yes, because it means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for violations But that's another question. You could read that as currently. Okay. Well, actually, I have another point to that, and this is, I think, what really is, it kind of hits the nail in this particular case. The posture of this case, we have plaintiffs who are defined as a class of individuals seeking future injunctive relief, claiming that if a certain procedure hasn't been changed, they're going to be over-detained. We're not talking about plaintiffs – we're not talking about a case here where there was a finding that the plaintiffs had been previously over-detained. We're talking about plaintiffs claiming that they will be over-detained if a procedure isn't changed. So the plaintiffs, by definition, would fall – I'm trying that they're plaintiffs and as the class is defined. I look that up, too. At the time they were plaintiffs and as the class is defined, my supposition that they don't fall within the literal definition of subsection E is not correct, simply because of how the class was defined and how – and the situation of the  I'm sorry. Maybe I'm not following, Your Honor. I'm just saying your point's well taken. Okay. I've got a related point that occurs to me. I'm still on this attorney's fees business, and I'm looking at the in any action part of the statute. It says, in any action brought by a prisoner who is confined, what if we have a prisoner who is confined? During the time he is confined, he is subjected to what he contends are conditions that violate the Eighth Amendment. He is then released. He then brings suit after his release. Is he covered by the Prison Litigation Reform Act and by this attorney's fees provision? All I can say is that the most recent decision that I'm aware of, it came out in April 2003. It's a district court decision, District of Arizona. The citation is Morgan v. Maricopa County, 259 Bedsop 2nd, 985. And in that case, the Court held that the Prison Litigation Reform Act applied, even though the plaintiff was no longer incarcerated, where the claims were based on events pertaining to the incarceration. And I think I draw to your earlier reading of the act. And I read it. Why would that be so? Well, I think the Court in that case read it very similar to the way Judge Fletcher earlier said that subsection D1 would at least apply where any action with respect to an incident that happened in the prison. Yeah, but if that's so, and if you like that case, you better like my answer that he's not disabled from bringing suits arising out of events before he was incarcerated. That is to say, the literal language of this statute says once he's out of jail, this statute doesn't apply to him. Once we get away from the literal language, there's just no stopping it. There's a lot of potential variations on this statute that could be obviously involved in different circumstances. I try to stick to what this case involves. The situation in this case, I think this case falls squarely within the language of the Prison Litigation Reform Act. But I do understand there are modifications that may require a different reading of it. Thank you, Counsel. Thank you, Your Honor. Counsel. First of all, I apologize again, because I feel rather humiliated by what I heard. And I haven't focused on it yet, but I am. That's all right. Embarrassed. And I apologize again. I have three quick points to make, and they are these. We submitted a supplemental excerpt to the record that Catherine Bloomfield in our office submitted and prepared that caught something that I didn't see. It was submitted on March 28th of this year. And it seems to me that since under Wyatt v. Terhune, the Prison Litigation Reform Act doesn't become part of your claim such that you need to plead it, but because it's an affirmative defense, as I understand it, that since the answer, which is set forth in our supplemental excerpts of record, it's entitled defendant Sherman Block, who was the predecessor defendant in this case, doesn't set it up at all. There is an issue as to whether or not it can be set up and claimed as a bar in this action, not having been pled as an affirmative defense. My understanding is that under a U.S. Supreme Court case from 1984 called Gomez v. Toledo, which is the first case that has expressed language on this, something that's being set up as an affirmative defense has to be both pled and proved by the defense. And I wonder if you can prove it if you didn't plead it. I'm not ‑‑ I don't see why it would be an affirmative defense. The claim is for an injunction to quit holding prisoners for up to a day and a half after they've been ordered released. It's not in a ‑‑ the Prison Litigation Reform Act is not raised as a defense to that. It just goes to the collateral matter of awardability of attorney's fees. I think if it doesn't raise it as a defense, it's not applicable. I'm trying to remember exactly ‑‑ Attorney's fees aren't a claim or a defense. They're just collateral as being in the nature of costs. I don't see it as collateral in this configuration for the ‑‑ I've just about run out of time. May I have an extra two minutes, please? Take another minute. Okay. I think it's got to be pled. I don't think it's collateral in the way you just suggested, Judge Kleinfeld. I think that the burden is on the defense to set it up at all. And then if they want to get into it, they have to have said something about it. They can't wait until the end and say it's a bar. I believe that Wyatt v. Terhune clearly stands for that proposition. Second, the Brass case. Judge Friedman's opinion, I think Judge Kaczynski and Judge Rawlinson were on that panel also, was limited in a way, I think, but I'm sure the county will try to expand it, to a guy who claimed he should be first in line to get released because he had been ordered to be released by a court. But I think that this court necessarily will take notice of that case, and its existence renders this case not moot, just because it's a judicial fact. Last, I was thinking when I heard Judge Wardlaw's question about what if someone has been ordered released, are they still a prisoner within the Act, I think that's an open question, but I think there's an argument to be made, and I'll make it here, that perhaps it becomes a Fourth Amendment case and it isn't a Fourteenth or Eighth Amendment case. I don't purport to know the definitive answers to all of those issues, and unless the panel has any other questions, I've used up the minute I was generously given. Thank you, counsel.        Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. The window will be out. Yank me.  Thank you. Thank you. The Waggie v. Block is submitted. The Court is adjourned.
judges: Kleinfeld, Wardlaw, W Fletcher